*In re: S.K.*, No. 41, September Term, 2018.  Opinion by Getty, J.

## MINORS—SALE OR DISSEMINATION OF INDECENT MATERIALS TO CHILDREN

The Court of Appeals held that under the plain language of CR § 11-207(a)(4), a minor may be adjudicated delinquent as a distributor of child pornography and a displayer of obscene matter by the minor's act of sexting a cellphone video depicting obscene content to other minors.

## TELECOMMUNICATIONS—SOLICITING MINOR FOR SEX OR ILLEGAL ACT; CHILD PORNOGRAPHY

The Court of Appeals held that, based on legislative intent to foreclose any technological loopholes through which actors may potentially distribute child pornography, the term "film" as utilized within CR § 11-203(a)(4) encompasses digital video recordings.

## OBSCENITY—DEPICTIONS OF MINORS; CHILD PORNOGRAPHY

The Court of Appeals held that a video exchanged by means of text message fell within the statutory definition of an "item" under CR § 11-203, that the contents of that video were obscene, and that the juvenile court did not err in finding S.K. involved in displaying obscene materials to minors under CR § 11-203.

Circuit Court for Charles County
Case No. 08-J-17-000023
Argued: February 1, 2019

IN THE COURT OF APPEALS
OF MARYLAND

No. 41

September Term, 2018

IN RE: S.K.

Barbera, C.J.
*Greene,
McDonald,
Watts,
Hotten,
Getty,
Harrell, Glenn T. (Senior Judge, Specially Assigned)

JJ.

Opinion by Getty, J.
Hotten, J., dissents.

Filed: August 28, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

> **sexting.** (2005) the creation, possession, or distribution of sexually explicit images via cellphones. • The term is a portmanteau of *sex* and *texting*.
>
> *Black's Law Dictionary*, 11th Edition, 2019

Like all teenagers, S.K. sought to impress and humor her closest friends. During the 2016–17 school year at Maurice J. McDonough High School in Charles County, Maryland, the sixteen-year-old female maintained a group chat on her cellphone for text messages with her best high school friends, A.T., another sixteen-year-old female, and K.S., a seventeen-year-old male. The group chat was used, among other things, to send silly photos and videos in an effort to "one-up" each other. The trio hung out together and trusted one another to keep their group messages private.

As part of the "one-up" competition, S.K. sent a one-minute video of herself performing fellatio on a male. Later in the school year, when there was a falling-out among the trio of friends, the video was distributed to other students at the school and shared with the school resource officer. As a result, the State's Attorney for Charles County filed a juvenile petition alleging criminal charges against S.K. under Maryland's child pornography and obscenity statutes, Maryland Code, Criminal Law ("CR"), §11-207(a)(4) and §11-203(b)(1)(ii) respectively.

As a matter of first impression, the main issue before this Court is whether a minor may be adjudicated delinquent under the current statutory scheme as the "person" who is a distributor of child pornography and a displayer of obscene matter when she is also the minor participant in the sex act. Put more dramatically, can a minor legally engaged in

consensual sexual activity be his or her own pornographer through the act of sexting?  For the reasons explained above, the language of CR § 11-207 in its plain meaning is all-encompassing.  The General Assembly has not updated the statute's language since the advent of sexting and thus we may not read into the statute an exception for minors.  As to a second issue, a cellphone video is a digital file that is broadly captured under the term "film" in the enumerated "items" set forth in CR § 11-203.  Therefore, S.K.'s conduct is covered by the language of the obscenity statute.

## BACKGROUND

During the 2016–17 school year, two sixteen-year-old females, A.T. and S.K., and a seventeen-year-old male, K.S., were best friends attending Maurice J. McDonough High School in Charles County, Maryland.  S.K. and A.T. had been friends since elementary school.  The trio had a group chat on their cellphones in which they would communicate with one another by text message.  A.T. stated the group chat was used, among other things, to send silly photos and videos to "one-up" each other.  The trio frequently hung out together and trusted one another to keep their group text messages private.

In October, A.T. and K.S. received a text message containing a video recording from S.K.'s cellphone number.  The video was approximately one minute in length and showed S.K. performing fellatio on a male.  The male's identity and age were not established in the testimony at the adjudication hearing although A.T. testified that she knew him.  In the video, S.K. is nude and her upper torso, including an exposed breast, is visible throughout most of the video.  The nude male's mid-torso and erect penis are shown during the majority of the video although an unfocused view of his face is visible momentarily at the

2

video's conclusion. The male appears to be the one filming the video through an extended reach of his arm similar to taking a selfie.[1]

In December, S.K. and K.S. had a falling out.[2] Commenting on the falling out, A.T. testified:

> We all used to be friends. And at the time [K.S.] just really dislikes her. And you can ask anybody in his sixth period class. Cause we used to eat lunch together. And he would always write on the board like, saying she's a slut or saying any type of thing.

K.S. began urging A.T. to go with him to the school resource officer to report the video of S.K. Eventually, A.T. relented. K.S. testified he was worried about S.K. and wanted her to receive help. However, A.T. testified that the motives of K.S. were not so pure. A.T. testified that K.S. was bragging around school about S.K. going to jail if he were to report the text message to the school resource officer. She stated, "he has a strong hate towards her. And he kinda [sic] just pulled me along with him because he knew I would be on his side."

A.T. and K.S. went to the school resource officer, Officer Eugene Caballero of the Charles County Sheriff's Office. At the meeting, A.T. and K.S. told Officer Caballero about the video. At that point, K.S. possessed the video as an email attachment. He

---

[1] A "selfie" is defined as "an image that includes oneself (often with another person or as part of a group) and is taken by oneself using a digital camera especially for posting on social networks." Selfie, Merriam–Webster, http://www.merriam-webster.com/dictionary/selfie (https://perma.cc/G7YH-DG7N).

[2] From the record, it does not appear that A.T. and S.K. experienced an equivalent erosion of their friendship. Further, at the time of the adjudication, A.T. and S.K. were back together as friends again.

displayed the email and video on Officer Caballero's computer. Officer Caballero then instructed K.S. to delete the video from his email account.

After receiving a copy of the video from K.S., Officer Caballero met with S.K. at the Robert D. Stethem Educational Center in Charles County. S.K. was read her Miranda rights and agreed to speak with Officer Caballero. In his police report, Officer Caballero stated S.K. cried during their meeting and was upset that the video was going around the school.[3] S.K. was under the impression that Officer Caballero met with her to stop the video from further distribution to other students. At no point during this meeting did Officer Caballero inform S.K. that she was considered a suspect for criminal activity. S.K. provided Officer Caballero with a written statement admitting that she was in the video and had only sent it to her two friends.

The police report was referred to the State's Attorney for Charles County who had discretion as to whether to file the criminal charges. After review, the State charged S.K., as a juvenile, with three counts as follows: Count 1: filming a minor engaging in sexual conduct in violation of CR § 11-207(a)(2); Count 2: distributing child pornography in violation of CR § 11-207(a)(4); and Count 3: displaying an obscene item to a minor in violation of CR § 11-203(b)(1)(ii).

---

[3] A.T. testified that K.S. was the one who distributed the video throughout the school. K.S. testified he never showed anyone else the video, but stated he discussed the contents of the video with others. At the time of the adjudicatory hearing, neither K.S. nor A.T. was charged for the possession or distribution of the video.

The adjudicatory hearing was held on April 27, 2017 before the Circuit Court of Charles County sitting as a juvenile court. S.K. was represented by the Office of the Public Defender. A.T., K.S., and Officer Caballero testified during the hearing. At the conclusion of the hearing, Count 1, filming a minor engaging in sexual conduct, was dismissed because there was no evidence presented that S.K. was filming the video. At the end of closing argument, the juvenile court found S.K. involved as to Counts 2 and 3.[4]

At a subsequent disposition hearing on May 18, 2017, S.K. was placed on electronic monitoring until June 9, 2017 and supervised probation administered by the Department of Juvenile Services. S.K.'s probation was subject to several terms and conditions such as: (1) reporting to the Probation Officer; (2) obtaining permission before changing her home address or leaving the State; (3) permitting the Probation Officer to visit her home; (4) submitting to weekly drug urinalysis; (5) attending and completing anger management class; (6) submitting to a substance abuse assessment and following any recommendations; and (7) "level 1 treatment"[5] as recommended. S.K. was not ordered to register as a sex offender. On September 27, 2018, after fulfilling her probation requirements, this case was ordered closed and sealed.

---

[4] Meaning she was involved in a delinquent act "which would be a crime if committed by an adult." Md. Code (2006, 2013 Repl. Vol.), Cts. & Jud. Proc. § 3-8A-01(l).

[5] S.K.'s "level 1 treatment" was the electronic monitoring ordered until June 9, 2017. The order for electronic monitoring permitted S.K. to attend all services provided by the Department of Juvenile Services, conduct business at the Motor Vehicle Administration, attend driving classes, and attend work.

S.K. appealed the delinquency finding and subsequent disposition to the Court of Special Appeals. In a reported opinion, the Court of Special Appeals held, relevant to the issue before us, that a minor legally engaged in consensual sexual activity is not exempted from CR § 11-207(a)(4) and thus is in violation of the child pornography statute. *In re S.K.*, 237 Md. App. 458, 473 (2018). As to CR § 11-203(b)(1)(ii), the statute prohibiting displaying of obscene items to minors as applied to juveniles, the Court of Special Appeals held a digital file did not come within the meaning of the statutory term "item." *Id.* at 487.

In reaching its conclusion, the Court of Special Appeals first examined the plain language of CR § 11-207(a). *Id.* at 466. Based on its reading of what it deemed to be the plain language of the statute, "a minor is 'engaged as a subject' in sexual conduct if she or he is a participant in, or the object of, such conduct" and the statute provided no exemption for minors engaging in the conduct themselves. *Id.* at 469, 470–471. The Court of Special Appeals also considered the government's interest in combating child pornography, citing the government's concern for preventing children from becoming the subjects of child pornography. *Id.* at 472 (citing *Outmezguine v. State*, 335 Md. 20, 37 (1994) (hereinafter "*Outmezguine II*") ("The State unquestionably has a significant interest in protecting children, and in prohibiting the use of children as subjects in pornographic material."). The Court of Special Appeals engaged in a review of the legislative history bolstering its conclusion as to the plain meaning of the statute. *Id.* at 470. Further, the Court of Special Appeals found no exceptions in the statute such as a limitation to non-consensual or abusive conduct or an exception when the minor depicted is also the distributor. *Id.* at 471.

6

As to the second delinquency finding, the Court of Special Appeals held that the digital file S.K. sent by text message was not an "item" covered within the statute. *Id.* at 482. The digital file S.K. sent was not a still picture, photograph, book, pocket book, pamphlet, magazine, or recorded telephone message. *Id.* Therefore, if it were to fall within the statute, it needed to be a "videodisc, videotape, video game, film, or computer disc." *Id.* at 484 (quoting CR § 11-203(a)(4)(iii)). The Court of Special Appeals interpreted "film" as a medium on which images or videos are stored. *Id.* at 486. As the remainder of items enumerated are paired with other physical mediums, the intermediate appellate court concluded "that the plain meaning of 'film,' in the context of this statute, refers to that particular type of media on which photographs or videos can be produced." *Id.* Consequently, the intermediate appellate court held that the cellphone video falls outside the specific list of items in the statute.

S.K. filed a petition for writ of certiorari with this Court which was granted on October 9, 2018. *In re S.K.*, 461 Md. 483 (2018). In addition, the State filed a conditional cross-petition for writ of certiorari, which was granted. *Id.* Together, they present two questions for our review. We have rephrased the questions as follows:[6]

---

[6] The exact questions presented were:

1. Did the juvenile court err in finding 16-year-old S.K. involved in distributing child pornography as proscribed by [CR] § 11-207(a), where she was both the sender and the only depicted minor, and where the act depicted was not in itself criminal?

2. Did the juvenile court properly find S.K. involved in the offense of displaying an obscene item to a minor despite the fact that, as the Court of Special Appeals

7

1. Did the juvenile court err in finding 16-year-old S.K. involved in distributing child pornography as proscribed by CR § 11-207(a)(4)?

2. Did the juvenile court err in finding S.K. involved in the offense of displaying an obscene item to a minor as proscribed by CR § 11-203(b)(1)(ii)?

As to the first question presented, we hold that S.K.'s sexting is within the purview of our current statutory scheme, therefore, the juvenile court did not err in finding S.K. delinquent under CR § 11-207(a)(4). Thus, the judgment of the Court of Special Appeals as to the first question presented is affirmed. As to the second question, the video text message falls within the definition of an "item" and thus, S.K.'s conduct is within the purview of CR § 11-203(b)(1)(ii). Therefore, we reverse the judgment of the Court of Special Appeals for the crime of displaying an obscene item to a minor.

## STANDARD OF REVIEW

In reviewing a juvenile delinquency case, "the judgment of the [juvenile court] will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the [juvenile] court to judge the credibility of the witnesses." *Dixon v. State*, 302 Md. 447, 450 (1985). When reviewing the juvenile court's interpretation of a statute, however, the interpretation of a statute is a question of law that we review without deference. *Brown v. State*, 454 Md. 546, 550 (2017) (citing *Bellard v. State*, 452 Md. 467, 480–81 (2017)).

---

held, the statute does not specifically state that it applies to "an electronically-transmitted digital video file"?

8

**DISCUSSION**

For the first time, this Court is confronted with the complexities of the sociocultural phenomenon of sexting by minors in the context of Maryland's criminal statutes as applied in a juvenile proceeding. We are asked to determine whether it is a violation of the child pornography statute for a sixteen-year-old minor female to distribute a one-minute video via text message to her best friends in which she is engaging in sexual conduct that is not criminal. Further, we are asked whether the distribution of the text message video qualifies as an "item" codified in the obscenity statute criminalizing the display of obscene matter to a minor.

Central to this issue is the dominant role cellphones play in our society. In *Riley v. California*, Chief Justice John Roberts observed that "modern cellphones . . . are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." 134 S. Ct. 2473, 2484 (2014). Undoubtedly, smartphone use has become ubiquitous across all generations. However, Generation Z, loosely comprising of those born after 1997, has a distinctive relationship with this technology. Unlike the Silent Generation, Baby Boomers, Generation X, or Millennials, Generation Z has never known life without access to a smartphone.

Today, ninety-five percent of teens have access to smartphones and ninety-seven percent of teens use at least one of the seven major online platforms.[7] Forty-five percent

---

[7] Monica Anderson & JingJing Jiang, Pew Research Center, *Teens' Social Media Habits and Experience*s (November 28, 2018), https://www.pewinternet.org/2018/11/28/teens-

of teenagers report to be online on a virtually constant basis.[8]  This technology has changed communication patterns among our teenagers.  Rather than make a phone call, forty-nine percent of teenagers indicate that text messaging is their first choice for communicating with their closest friend.  In a 2010 study, one in three teenagers sends more than one hundred text messages a day, or three-thousand text messages a month.[9]

Sexting is a sociocultural phenomenon that has evolved from the use of smartphones.  Black's Law Dictionary identifies the origin of the word "sexting" in the year 2005 and defines it as "the sending of sexually explicit messages or images by cellphone."[10]  Consistent with the rise in smartphone usage, at least 18.5% of middle and high schoolers report having received sexually explicit images or videos on their phones

_____

social-media-habits-and-experiences/#fn-21827-1 (https://perma.cc/TDT7-63SF) (last accessed August 15, 2019) (citing Monica Anderson & JingJing Jiang, Pew Research Center, *Teens, Social Media & Technology* 2018 (May 31, 2018): https://www.pewinternet.org/2018/05/31/teens-social-media-technology-2018/ (https://perma.cc/J8CA-TPZ5) (last accessed August 15, 2019).

[8] JingJing Jiang, Pew Research Center, *How Teens and Parents Navigate Screen Time and Device Distractions* (August 22, 2018), https://www.pewinternet.org/2018/08/22/how-teens-and-parents-navigate-screen-time-and-device-distractions/ (https://perma.cc/7CQE-C83P )(last accessed August 15, 2019).

[9] Amanda Lenhart et al., Pew Research Center, *Teens and Mobile Phones* (April 20, 2010), https://www.pewinternet.org/2010/04/20/teens-and-mobile-phones/ (https://perma.cc/P7CM-NQC5 )(last accessed August 15, 2019).  This 2010 comprehensive study is still frequently referenced today as a landmark study about cellphone use and its impact on teenage social mores.

[10] While sexting is typically engaged in between romantic partners, we note that the definition encompasses a sexually explicit message by cellphone to friends.  We do not believe that the case before us is unique in that it is not between romantic partners, but instead is between friends.

10

or computers.[11]   There is no indication this trend will decrease as the pervasiveness of technology in our lives continues.

As sexting has grown in popularity, so has the attention given to the issue.  As early as 2007, the legal community began to debate what was coined "self-produced child pornography."  *Compare* Mary Graw Leary, *Self-Produced Child Pornography: The Appropriate Societal Response to Juvenile Self-Sexual Exploitation*, 15 Va. J. Soc. Pol'y & L. 1 (2007) with Stephen F. Smith, *Jail for Juvenile Child Pornographers?: A Reply to Professor Leary*, 15 Va. J. Soc. Pol'y & L. 505 (2008).  In 2009, in response to the national attention[12] focused on teenage sexting, additional legal scholars began to address the issue by distinguishing this activity from child pornography and discussing appropriate sanctions.  *See, e.g.*, Clay Calvert, *Sex, Cell Phones, Privacy and the First Amendment: When Children Become Child Pornographers and the Lolita Effect Undermines the Law*, 18 CommLaw Conspectus 1 (2009); Robert H. Wood, *The Failure of Sexting*

---

[11] Linda Searing, *The Big Number: 18.5 percent of youths get sexually explicit images, videos on devices*, Washington Post (July 27, 2019); https://www.washingtonpost.com/health/the-big-number-185-percent-of-youths-get-sexually-explicit-images-videos-on-devices/2019/07/26/2720ae4e-aee5-11e9-a0c9-6d2d7818f3da_story.html?utm_term=.eec26e054fb5 (https://perma.cc/6J6K-WW9C)(last accessed August 15, 2019).   We acknowledge there are differences between those eighteen years and older engaging in sexting and those who are minors.  For a more thorough review of teenage sexting *see* Amy Adele Hasinoff, *Sexting Panic: Rethinking Criminalization, Privacy, and Consent* (2015).

[12] The media frenzy surrounding sexting began in 2009.  In 2008, the National Campaign to Prevent Teen and Unplanned Pregnancy conducted and released a study entitled "Sex and Tech: Results from a Survey of Teens and Young Adults."  *Calvert*, at 10.  The results were covered in *The New York Times, USA Today, Wall Street Journal, Washington Post, The Early Show on CBS, Nightline, NPR,* and *Law and Order: SVU. Id.* at 21.

*Criminalization: A Plea for the Exercise of Prosecutorial Restraint*, 16 Mich. Telecomm. & Tech. L. Rev. 151 (2009); W. Jesse Weins & Todd C. Hiestand, *Sexting, Statutes, and Saved by the Bell: Introducing a Lesser Juvenile Charge with an "Aggravating Factors" Framework*, 77 Tenn. L. Rev. 1 (2009).  These articles sought to survey the issue and suggest potential legislation to address this unique phenomenon.[13]

In addition to the attention many legal scholars gave the issue, other states responded with specific legislation addressing teenage sexting. [14]  States have addressed this issue by including provisions such as separate offenses applied to minors, affirmative defenses for minors, and lower penalties if the minor is found delinquent.  The lower "penalties" include services like classes specifically addressing sexting and phone usage,

---

[13] We also reviewed John O. Hayward, *Hysteria Over Sexting: A Plea for a Common Sense Approach*, 14 Atlantic L.J. 60 (2012) and Mary Graw Leary*, Sexting or Self-Produced Child Pornography? The Dialog Continues—Structured Prosecutorial Discretion Within A Multidisciplinary Response*, 17 Va. J. Soc. Pol'y & L. 486 (2010).

[14] *See also* Arkansas Rev. State. Ann. § 5-27-609 (possession of sexually explicit digital material) (creating a separate offense, disposition, and affirmative defenses for minors); Colo. Rev. State St. § 18-7-109(2) (posting, possession, or exchange of a private image by a juvenile); Conn. Gen. Stat. § 53a-196h (possessing or transmitting child pornography by minor: Class A misdemeanor); Fla. Stat. § 847.0141(3) (sexting; prohibited acts; penalties) (applying to minors); Haw. Rev. Stat. § 712-1215.6 (promoting minor-produced sexual images in the second degree); Id. Stat. § 18-1507A (sexual exploitation of a child by electronic means); 750 Il. Comp. Stat. Ann. § 405/3-40 (minors involved in electronic dissemination of indecent visual depictions in need of supervision); La. Stat. Ann. § 81.1.1 ("sexting") (addressing minors); N.Y. Penal Laws § 60.37 (directing that those who sext may be eligible to participate in an education program in lieu of adjudication); R.I. Gen. Laws. Ann. § 11-9-1.4 (minor electronically disseminating indecent material to another person—"Sexting"); S.D. Codified Laws § 26-10-33 (juvenile sexting prohibited—violation as misdemeanor); Tex. Penal Code Ann. § 43-261(b) (electronic transmission of certain visual material depicting minors); WA St. 9.68A.050 (dealing in depictions of minor engaged in sexually explicit conduct).

community service, and counseling. Although the majority of states have passed legislation to amend their child pornography statute relative to sexting, Maryland is one of twenty-one states that have not passed any such legislation and thus permit teenagers to be charged under the child pornography statute.[15]

Occasionally, other state courts have considered the breadth of their child pornography statute vis-à-vis sexting. In *State v. Gray*, the Washington Supreme Court addressed whether a seventeen-year-old boy's act of "electronically sending an unsolicited picture of his erect penis to an adult woman" violated the language of Wash. Rev. Code § 9.68A.050(2)(a) that "[a] person commits the crime of dealing in depictions of a minor engaging in sexually explicit conduct in the second degree when he or she . . . [k]nowingly . . . disseminates . . . any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct." 189 Wash.2d 334, 337 (2017). The majority upheld the conviction, holding that the statute was unambiguous, thus the minor's conduct violated the statute.[16] *Id.* ("Therefore, when any person, including a juvenile, develops, publishes, or disseminates a visual depiction of any minor engaged in sexual conduct, that person's actions fall under [RCW 9.68A.050]'s provisions.").

---

[15] These states include: Alabama, Alaska, California, Delaware, Iowa, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, New Hampshire, North Carolina, Ohio, Oregon, South Carolina, Tennessee, Virginia, Wisconsin, and Wyoming.

[16] We note that the Washington State Legislature acted to amend its statute partially in response to this case.

The court determined there was nothing under the statute which indicated a natural person and a minor cannot be the same person. *Id.* at 341. Further, if the Washington State Legislature had intended to exclude minors, it would have explicitly done so. *Id.* at 342. As to the policy arguments, the court commented:

> We understand the concern over teenagers being prosecuted for consensually sending sexually explicit pictures to each other. We also understand the worry caused by a well-meaning law failing to adapt to changing technology. But our duty is to interpret the law as written and, if unambiguous, apply its plain meaning to the facts before us.

*Id.* In sum, the Washington court recognized that as the statute was unambiguous, the statute applied to the minor unless the legislature passed a remedial statute.

In a recent Colorado case, a male teenager was romantically involved with two female teenagers during the 2012–2013 school year. *People in Interest of T.B.*, 2019 WL 2495514 (June 17, 2019 Co.). He exchanged nude selfies by text message with the females. The male kept the photos on his cellphone, and, when he was arrested in 2013 on an unrelated sexual assault charge, police discovered the photographs of the nude females on his cellphone. *Id.* He was charged and adjudicated delinquent for sexual exploitation of a child under section 18-6-403(3), C.R.S. (2018). *Id.* The majority upheld the conviction.[17]

---

[17] The General Assembly in Colorado recently enacted H.B. 17-1302 in response to the concern over teen sexting. Although the new statute did not apply to the earlier conduct of T.B., the court explained the revised statute:

> created, among other lower-level offenses, the civil infraction of "exchange of a private image" by a juvenile. Under this new offense, a juvenile who knowingly possesses a sexually explicit image of another person who is at least fourteen years old or less than four years younger than the juvenile, and who reasonably believes the depicted person transmitted the image or otherwise agreed to its transmittal, commits a civil infraction punishable by

14

The majority determined the statute was not ambiguous and refused to read into the statute an exemption for minors. In addition to the plain language, the court reviewed the legislative history, concluding that "nothing . . . suggests that such harms are lessened or do not exist merely because the sexually exploitive material is made, possessed, or distributed by a juvenile rather than an adult." *Id.* at \*9.

While sexting, specifically when engaged in by teenagers, has been addressed extensively in the literature, the media, and by state legislatures in other jurisdictions, the General Assembly has not updated Maryland's statutes to address this contemporary issue. For context, CR § 11-207 has not received a substantial revision by the General Assembly since 1986 and CR § 11-203 not been revised by the General Assembly since 2006.[18] The present case turns on whether a minor who privately distributes a video to her friends in which she is depicted engaging in an act that in itself is not illegal may be deemed delinquent under CR § 11-207(a)(4) or CR § 11-203(b)(1)(ii). We will review each statute in turn.

**A. The Plain Language of CR § 11-207(a)(4) Subsumes Situations Where a Minor Produces and Distributes Pornographic Material of Himself or Herself.**

---

a fine of up to $50 or participation in a program addressing the risks and consequences of such behavior.

*People in Interest of T.B.*, 2019 WL 2495514 at \*3. There, since the juvenile's actions predated the statutory change, he was subject to registration as a sex offender rather than a civil penalty. *Id.* at \*16 (Gabriel J, dissenting).

[18] *But see infra* at n.22, 24 for a discussion of efforts in the 2019 Legislative Session of the Maryland General Assembly.

15

In the mid-1970s, the federal government and state governments determined a need to focus their legislation "on the use of children as the subjects of pornographic material." *Outmezguine v. State*, 97 Md. App. 151, 159 (1993) (hereinafter "*Outmezguine I*"), *aff'd* 335 Md. 20 (1994). Previously, states had focused on obscenity in general, but this period was the first time the statutes were targeting the involvement of minors in the commercial production and trade of child pornography. *Id.* In 1977, Congress passed the Protection of Children Against Sexual Exploitation Act to address the interstate nature of this pornography. *Id.* at 160. The Act in part was protecting "highly vulnerable children' . . . frequently the 'victims of child abuse, or of broken homes, or of parents who simply do not care.'" *Id.* (quoting S. Rep. No. 95-438 (1977), U.S. Code Cong. & Admin. News 1978, pp. 40, 46). At that time, "only six States then had statutes proscribing the use of children in the production of pornographic material and [] no Federal law [existed that] dealt directly with 'the abuse of children that is inherent in the production of such materials.'" *Id.* As a result of the federal legislation, many states followed suit and enacted their own statutes. The General Assembly enacted Maryland's first child pornography statute in 1978.

Also guiding our interpretation is the constitutional case of *New York v. Ferber*, 458 U.S. 747 (1982). The Court in *Ferber* held "that the First Amendment permits a state to proscribe the distribution of sexual materials involving minors without regard to an obscenity standard." *Moore v. State*, 388 Md. 446, 461 (2005) (citing *Ferber*, 458 U.S. at 760–61). The Supreme Court has recognized that "[t]he prevention of sexual exploitation

16

and abuse of children constitutes a government objective of surpassing importance."

*Ferber*, 458 U.S. at 757. As to the dangers of child pornography, the Supreme Court stated:

> The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled. Indeed, there is no serious contention that the legislature was unjustified in believing that it is difficult, if not impossible, to halt the exploitation of children by pursuing only those who produce the photographs and movies. While the production of pornographic materials is a low-profile, clandestine industry, the need to market the resulting products requires a visible apparatus of distribution. The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product.

*Id.* at 759–60.

With this historical backdrop, we now turn to an analysis of the statute. This Court provides judicial deference to the policy decisions that the General Assembly enacts into law. *See Blackstone v. Sharma*, 461 Md. 87, 113 (2018). "We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Phillips v. State*, 451 Md. 180, 196 (2017). As we have previously stated:

> When conducting a statutory construction analysis, we begin "with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Schreyer v. Chaplain*, 416 Md. 94, 101 (2010) (quoting *Adventist Health Care Inc. v. Maryland Health Care Comm'n*, 392 Md. 103, 124 n.13 (2006)). When the "words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent

17

in other indicia[.]" *State v. Bey*, 452 Md. 255, 266 (2017). Moreover, after determining a statute is ambiguous, "we consider the common meaning and effect of statutory language in light of the objective and purposes of the statute and Legislative intent." *Stachowski v. Sysco Food Servs. Of Baltimore, Inc.*, 402 Md. 506, 517 (2007).

*Blackstone*, 461 Md. at 113.

In addition to the plain language, the modern tendency of this Court is to continue the analysis of the statute beyond the plain meaning to examine "extrinsic sources of legislative intent" in order to "check [] our reading of a statute's plain language" through examining "the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments." *Brown v. State*, 454 Md. 546, 551 (2017) (quoting *Phillips v. State*, 451 Md. 180, 196–97 (2017) (internal quotation marks omitted)); *see also Ingram v. State*, 461 Md. 650 (2018); *Balt. City Det. Ctr. v. Foy*, 461 Md. 627 (2018); *C&B Constr., Inc. v. Dashiell*, 460 Md. 272 (2018); *Watts v. State*, 457 Md. 419 (2018); *Ben-Davies v. Blibaum and Assocs. P.A.*, 457 Md. 228 (2018); *Comm'r of Fin. Regulation v. Brown, Brown & Brown P.C.*, 449 Md. 345 (2016).

In the context of interpreting and applying criminal statutory law, we have stated that "no [person] incurs a penalty unless the act which subjects him [or her] to it, is clearly, both within the spirit and letter of the statute. Things which do not come within the words are not to be brought within them by construction." *Howell v. State*, 278 Md. 389, 392 (1976). Further, "[c]ourts may consider the mischief at which the provision was aimed, the remedy, the temper and spirit of the people at the time it was framed, the common usage well known to the people, and the history of the growth or evolution of the particular

provision under consideration." *State v. Phillips*, 457 Md. 481, 488 (2018) (quoting *Johns Hopkins v. Williams*, 199 Md. 382, 386 (1952)).

The 1978 child pornography statute as amended, CR §11-207(a)(4)(i), prohibits a "person" from knowingly distributing "any matter, visual representation, or performance . . . that depicts a minor engaged as a subject in . . . sexual conduct." Sexual conduct is defined in CR § 11-101(d) as (1) human masturbation; (2) sexual intercourse; or (3) whether alone or with another individual or animal, any touching of or contact with: (i) the genitals, buttocks, or pubic areas of any individual; or (ii) breasts of a female individual." The entirety of CR § 11-207(a) provides that "a person may not:"

(1) cause, induce, solicit, or knowingly allow a minor to engage as a subject in the production of obscene matter or a visual representation or performance that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct;

(2) photograph or film a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct;

(3) use a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct;

(4) knowingly promote, advertise, solicit, distribute, or possess with the intent to distribute any matter, visual representation, or performance:
    (i) that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct; or
    (ii) in a manner that reflects the belief, or that is intended to cause another to believe, that the matter, visual representation, or performance depicts a minor engaged as a subject of sadomasochistic abuse or sexual conduct; or

(5) use a computer to knowingly compile, enter, transmit, make, print, publish, reproduce, cause, allow, buy, sell, receive, exchange, or disseminate any notice, statement, advertisement, or minor's name, telephone number, place of residence, physical characteristics, or other descriptive or identifying information for the purpose of engaging in, facilitating, encouraging,

19

offering, or soliciting unlawful sadomasochistic abuse or sexual conduct of or with a minor.

Matter includes: "(1) a book, magazine, newspaper, or other printed or written material; (2) a picture, drawing, photograph, motion picture, or other pictorial representation; (3) a statue or other figure; (4) a recording, transcription, or mechanical, chemical, or electrical reproduction; or (5) any other article, equipment, machine, or material." CR § 11-201(d). Distribution of child pornography as a first-time offender is a felony, punishable by up to ten years in prison and a $25,000 fine. An offender is required to register as a sex offender, but for a minor adjudicated delinquent for this act, registration is not mandatory but could be required at the trial court's discretion. Md. Code, Crim. Pro. § 11-704(c)(1).

S.K. contends this case is about whether CR § 11-207(a)(4) permits the prosecution of a minor for transmitting a visual representation of herself engaged in consensual, legal sexual conduct. S.K. argues the answer is no, stating the statute was intended to protect, not prosecute, minors victimized and exploited in the production of sexually explicit videos. Reading CR § 11-207(a)(4) in light of this statutory purpose, and in the context of the language of CR § 11-207, this provision should not be construed to criminalize a minor's dissemination of her own videotaped, consensual, legal sexual act.

S.K. argues there are two points of ambiguity in CR § 11-207(a) and thus a plain meaning interpretation of the statute is inapplicable. One point of ambiguity is the phrase "engaged as a subject in" sexual conduct and the other point is the dichotomy between the "person" knowingly distributing the sexually explicit child pornography and the "minor" victim who is portrayed in the sexual conduct. S.K. believes "subject" is defined as "one

20

who is under the rule of another or others." Thus, the phrase "engages as a subject in" connotes a legislative intent to proscribe the distribution of a visual representation of a minor who is unable to consent to the sexual conduct by force or age. As S.K was a sixteen-year-old minor, she was legally able to consent to engage in sexual conduct, and thus cannot be "subjected" to the apparently consensual sexual conduct. *See Garnett v. State*, 332 Md. 571, 577 (1993) (recognizing the age of consent to sexual relations in Maryland as sixteen).

Further, S.K. argues that in examining the other sections of CR § 11-207(a), the "person" whose action is being criminalized and the person being prosecuted cannot be the minor. Her analysis of CR § 11-207(a)(1)–(3), (5) indicates that the person and the minor must be different individuals. Therefore, it would be illogical for CR § 11-207(a)(4) to be read such that a person and a minor could be the same person. In general, the legislature's intent in adopting the statute was to criminalize the actions of child abusers and not criminalize the children depicted in the imagery.

The State contends that S.K. clearly falls under the statute pursuant to its plain language and that S.K.'s attempts to find ambiguity should be rejected. The Court of Special Appeals' definition dovetails with the ordinary usage of the term "subject" in the child pornography context and is consistent with the customary usage of the term. Further, applying CR § 11-207(a) to minors is consistent with achieving the goals of the juvenile justice system. The State argues that the juvenile justice system can provide resources for minors engaging in "self-harm." Further, when a minor produces or distributes images, a permanent record is created that could be shared beyond the potential intended recipients.

21

The State argues there is a potential for the image to fall into the hands of adults who traffic in child pornography. The State also turns to legislative history to support its plain meaning argument. It believes the legislation shows an intention to eradicate any child pornography regardless of who may be the distributor.

We do not find any ambiguity in this text and, therefore it is our duty to interpret the law as written and apply its plain meaning to the facts before us. *See In re Patrick A.*, 70 Md. App. 191, 201 (1987), *aff'd* 312 Md. 482 (1988) (quoting *Amalgamated Casualty Ins. Co. v. Helms*, 239 Md. 529, 535–36 (1965)) ("We must confine ourselves 'to a construction of the statute as written, and not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute.'"). We turn first to whether one individual can be both a person and a minor, as contemplated by CR § 11-207 or whether, as S.K. argues, the statute creates a dichotomy that requires the person and minor be different individuals. Under the definitional section of the Criminal Law Article, a minor "means **an individual** under the age of 18 years" and a person is defined as "**an individual**, sole proprietorship, partnership, firm, association . . . or other entity." CL § 1-101(g),(h) (emphasis added). Evident from these definitions, minors and persons are both individuals. However, a "person" is the broader concept; whereas, minors are a limited subset of persons, demarcated by age. Quite clearly, the term "person" encompasses both minors and adults.

As to the first potential area of ambiguity S.K. raises, we agree with the Court of Special Appeals and the State that a minor is "engaged as a subject" under the statute "if she or he is a participant in, or the object of, such conduct." *In re S.K.*, 237 Md. App. at

22

469. S.K. interprets the phrase "engaged as a subject in" to mean under authority or control and proffers that the statute applies only when the minor is unable to consent to the sexual conduct.[19] As to the second point of ambiguity raised, S.K. is certainly "a person" to which this statute would apply. We refuse to read into the statute an exception for minors who distribute their own matter, and thus we believe S.K.'s adjudication as delinquent under CR § 11-207 must be upheld.

Our review of the legislative history supports this interpretation. The first statute regulating child pornography in Maryland was enacted in 1978, the session of the General Assembly directly after the federal statute was enacted. *See* Md. Code Ann., Art. 27, § 419A.[20] This statute made it illegal for "a person to cause, induce, or knowingly permit a child under 16 years of age to engage as a subject in the production of obscene matter and made it illegal for a person to photograph or film a person under 16 years of age engaging in an obscene act." 1978 Md. Laws. ch. 573. The bill file contains testimony from a member of the National Conference of State Legislatures before a subcommittee of the House Judiciary Committee detailing the hope "to prosecute those responsible for using children in obscene materials and selling them for profit." *Moore*, 388 Md. at 461. The statute was intended to protect Maryland's "legitimate interest in seeing that children

---

[19] This interpretation would certainly create a major loophole with respect to child pornography laws. For example, a prosecutor would have to establish, particularly with respect to foreign-produced child pornography, that the child was younger than the age of consent in the particular country where the image or video was produced, as the child depicted would likely not be identifiable to testify as to the issue of consent.

[20] The precursor of CR § 11-207.

located within its [borders were] not sexually exploited by using them as subject in an obscene commercial publication." Letter from Assistant Attorney General F. Todd Taylor, Jr. to Sen. Melvin A. Steinberg, Vice Chairman, S. Jud. Proc. Comm., at 1–2.

In 1985, the law was amended to include the knowing "promotion, distribution or possession with intent to distribute" imagery of "a child engaged as a subject in sexual conduct." *See* 1985 Md. Laws. ch. 494. The law expanded the reach of the statute beyond obscene matter to include sexual conduct when it came to promotion and distribution of pornographic material involving children. *Outmezguine*, 97 Md. App. at 165. These provisions were added "to make easier the prosecution and conviction of child pornography offenses to reduce the sexual exploitation and abuse of children." S. Jud. Proc. Com., Summ. of Comm. Rep. of S.B. 554 at 2 (1985).

In 1986, the Legislature extended the provision outlawing the photographing of children to include the photographing or filming of children under sixteen engaging in "sexual conduct." Md. Laws, ch. 112. In 1989, the law was revised to expand the age of a minor and apply the prohibitions to imagery of children under the age of eighteen, not only sixteen. Again, this was intended "to send a message to people who would exploit minors." Testimony of Delegate John G. Gary on H.B. 243 before the S. Jud. Proc. Comm. In addition, 419A(c) was renumbered as 419A(d). 1989 Md. Laws, ch. 398. In 2002, as

24

part of the code revision,[21] this provision was reenacted as what was then CR § 11-207(a)(4) and what is now CR § 11-207(a)(4)(i), 2010 Md. Laws, ch. 454.[22]

This case presents a unique challenge. On the one hand, there is no question that the State has an overwhelming interest in preventing the spread of child pornography and

---

[21] The "code revision is a periodic process by which statutory law is re-organized and restated with the goal of making it more accessible and understandable to those who must abide by it." *Smith v. Wakefield, LP*, 462 Md. 713, 726 (2019) (citing Alan M. Wilner, *Blame it all on Nero: Code Creation and Revision in Maryland* (1994)). Maryland Code Revision began in 1970 as a long-term project to create a modern comprehensive code when Governor Marvin Mandel appointed the Commission to Revise the Annotated Code. This formal revision of the statutory law for the General Assembly was coordinated by the Department of Legislative Services. Code Revision was completed in 2016 with the enactment by the General Assembly of the Alcoholic Beverages Article.

[22] Most recently, in 2019, House Bill 1027 was signed by Governor, Lawrence J. Hogan, Jr., on April 30. This bill expanded the definition of "sexual conduct" to include "lascivious exhibition of the genitals or pubic area of any person" and expanded the possession of child pornography under CR § 11-208 to include computer-generated images that are indistinguishable from an actual child under the age of sixteen. *See* 2019 Md. Laws ch. 325, House Bill 1027, Fiscal and Policy Note. The purpose of House Bill 1027 was to update the standard for "sexual conduct" so that it was consistent with the federal standard and to close a loophole that prevented the prosecution of certain individuals in Maryland. As to the computer-generated images portion, this was in response to the developing technology which has permitted pornographers to utilize computers to create images and videos in which the naked eye is unable to identify that the image is not that of an actual child. An aim of this legislation was a technology dubbed "deepfakes." Deepfakes are "videos that have been manipulated to make it look like the subject is realistically saying or doing something they didn't." *See* Benhamin Goggin, Business Insider, Jun. 23, 2019 "From porn to Game of Thrones: How deepfakes and realistic-looking fake videos hit it big" https://www.businessinsider.com/deepfakes-explained-the-rise-of-fake-realistic-videos-online-2019-6 (https://perma.cc/Y4CV-E7PA) ("Deepfakes also have the potential to differ in quality from previous efforts to superimpose faces onto other bodies. A good deepfake, created by AI that has been trained on hours of footage, has been specifically generated for its context, with seamless mouth and head movements and appropriate coloration.").

has been given broad authority to eradicate the production and distribution of child pornography. On the other hand, S.K., albeit unwisely, engaged in the same behavior as many of her peers. Here, S.K is prosecuted as a "child pornographer" for sexting and, because she is a minor, her actions fell directly within the scope of the statute. The General Assembly has consistently expanded the scope of the statute to assist in the eradication of any form of child pornography. As written, the statute in its plain meaning is all encompassing, making no distinction whether a minor or an adult is distributing the matter.

Therefore, based on this intent and the unambiguous language, we believe S.K.'s conduct falls within the purview of the statute. In affirming this adjudication, however, we recognize that there may be compelling policy reasons for treating teenage sexting different from child pornography. [23] In response to this case, legislation was introduced in the 2019 Legislative Session that was not passed but in light of these policy concerns, such legislation ought to be considered by the General Assembly in the future.[24]

---

[23] *See* Dr. JoAnne Sweeny, *Sexting Freedom of Expression: A Comparative Approach*, 102 Kentucky Law Journal 103 (2014) for a comparison of the ramifications of sexting compared with child pornography. Dr. Sweeny proposes that sexting and child pornography are different for crucial reasons. Unlike traditional pornography, the majority of these images are taken with consent and only discovered by an adult viewing the teens' phone or nonconsensual sharing. *Id.* at 112. The harm at issue when sexting is not the taking or sharing of the image, but instead what happens when other peers may review the image. *Id.* at 120. This is unlike child pornography where the child victim is subjected to abuse or exploitation. Dr. Sweeny also posits the "haunting" rationale does not apply to sexting as in child pornography, the haunting is the "existence of the images themselves or the fact that the sexual acts were photographed." *Id.* at 122. Finally, the "drying up the market" rationale does not fully apply as these images are often only passed around teen to teen.

[24] In response to Court of Special Appeals' decision, Delegate C.T. Wilson, from Charles County, introduced House Bill 1049 in the 2019 Legislative Session which would have

**B.**     **S.K.'s Conduct Falls Within That Contemplated by CR § 11-203.**

As to the cross-petition, the State argues the juvenile court properly found S.K. involved in the offense of displaying an obscene item to a minor under CR § 11-203(b)(1)(ii). The State urges this Court to use a broader definition of the word "film" to encompass any technological advances. Therefore, the text messaged video would be an "item" under the statute. Further, if the digital file is contemplated within the statute, then the texted digital file is obscene. S.K. argues for this Court to uphold the Court of Special Appeals' definition of "item," noting the Legislature's care to update the definition of "item" to include specific types of media, but not text-messaged videos. Additionally, S.K. argues the prosecution failed to prove the video that S.K. forwarded was obscene.

CR § 11-203(b)(1) provides, "a person may not willfully or knowingly display or exhibit to a minor an item: . . . (i) principally made up of an obscene description or depiction of illicit sex; or (ii) that consists of an obscene picture of a nude or partially nude figure." Item is defined as a "(i) still picture or photograph; (ii) book, pocket book, pamphlet, or

---

decriminalized the distribution or manufacturing of child pornography by a person younger than eighteen. *See* Fiscal and Policy Note for House Bill 1049. During a hearing on the bill before the House Judiciary Committee, Delegate Wilson testified that he introduced the bill because he disagreed with the decision of the State's Attorney for Charles County to pursue S.K. under the child pornography statute for her sexting incident. *Criminal Law– Distribution of Child Pornography–Minor: Hearing on HB 1049 Before Judiciary Comm.*, 2019 Leg. (Md. 2019) (statement of Del. Wilson), http://mgaleg.maryland.gov/webmga/frmMain.aspx?id=hb1049&stab=01&pid=billpage &tab=subject3&ys=2019RS (https://perma.cc/DQ8G-GECN). He acknowledged that as drafted the language of his bill was too broad but he urged the Committee to address the issue of teenage sexting by amending and passing House Bill 1049. *Id.* After the March 6, 2019 hearing, the Committee took no further action.

magazine; (iii) videodisc, videotape, video game, film, or computer disc; or (iv) recorded telephone message." CR § 11-203(a)(4). The statute defines "obscene" as any material,

> (i) that the average adult applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;
>
> (ii) that the work depicts sexual conduct specified in subsection (b) of this section in a way that is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material; and
>
> (iii) that the work, taken as a whole, lacks serious artistic, educational, literary, political, or scientific value.

CR § 11-203(a)(5). The statute provides additional definitions for terms that encompass the activity contained within the video that S.K. transmitted to her two friends.. The provision defines "illicit sex" to include any content which depicts, "(i) human genitals in a state of sexual stimulation or arousal; (ii) acts of human masturbation, sexual intercourse, or sodomy; or (iii) fondling or other erotic touching of the human genitals." CR § 11-203(a)(3). A person who violates this section is guilty of a misdemeanor and is subject to (1) for the first violation, imprisonment not exceeding 1 year or fine not exceeding $1,000 or both; and (2) for each subsequent violation, imprisonment not exceeding three years or a fine not exceeding $5,000 or both. CR § 11-203(d).

Maryland's statutory definition of obscenity is primarily based on the test for obscenity provided by the Supreme Court in *Miller v. California*, 413 U.S. 15, 24 (1973). Within our analysis, we first must determine whether the materials S.K. disseminated to her two minor friends constitute obscene material. After, we must determine whether a digital file falls within the list of "items" enumerated by CR § 11-203(a)(4).

28

Although the Maryland statutory definition of obscenity within this context contours closely to the definition set forth in *Miller*, the Supreme Court has recognized that states possess a compelling interest in "safeguarding the physical and psychological well-being of a minor" and has expanded the definition of obscenity in situations involving child pornography. *New York v. Ferber*, 458 U.S. 747, 756-57 (1982) (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607 (1982)). In that case, the Supreme Court explained,

> [t]he *Miller* standard, like all general definitions of what may be banned as obscene, does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children. Thus, the question under the *Miller* test of whether a work, taken as a whole, appeals to the prurient interest of the average person bears no connection to the issue of whether a child has been physically or psychologically harmed in the production of the work. Similarly, a sexually explicit depiction need not be "patently offensive" in order to have required the sexual exploitation of a child for its production. In addition, a work which, taken on the whole, contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest core of child pornography. "It is irrelevant to the child [who has been abused] whether or not the material ... has a literary, artistic, political or social value." We therefore cannot conclude that the *Miller* standard is a satisfactory solution to the child pornography problem.

*Ferber*, 458 U.S. at 761 (citation omitted). Moreover, obscene material involving adults is entitled to a substantially greater level of First Amendment protection, as compared to obscene material involving minors. *See United States v. Williams*, 553 U.S. 285, 288 (2008) ("[w]e have held that the government may criminalize the possession of child pornography, even though it may not criminalize the mere possession of obscene material involving adults.").

29

As mentioned *supra*, S.K. transmitted to her friends, A.T. and K.S., also minors, the digital file that contained depictions of: (i) her nude torso and exposed breast; (2) the male's erect penis; (3) and S.K. performing fellatio on a nude male. This material falls squarely within the definition of "illicit sex" as enacted by the General Assembly in CR § 11-203(a)(3). In fact, the video S.K. distributed depicted all forms of "illicit sex" contemplated by the statute including, "human genitals in a state of sexual stimulation or arousal[,]" "acts of human masturbation, sexual intercourse, or sodomy[,]" and "fondling or other erotic touching of human genitals." CR § 11-203(a)(3). Based on these statutory definitions and the Supreme Court's guidance upon obscenity within the context of displaying such materials to a minor, the video file that S.K. transmitted constitutes obscene material.

We agree with the juvenile court's finding and conclude that the video file S.K. transmitted to her friends contained obscene material based on the video's depiction of sexualized content of a nude minor engaging in the act of fellatio. Although the sexual act in this case was consensual, it also falls directly within the definition of Maryland's obscenity statute of "display[ing] or exhibit[ing] to a minor an [obscene] item" which contains "illicit sex" and a "partially nude figure." CR § 11-203(b)(1); s*ee also Moore*, 388 Md. at 461 ("[t]he First Amendment permits a state to proscribe the distribution of sexual materials involving minors without regard to an obscenity standard."). Even though we live in the newfound era of sexting, we shall not second-guess this legislative judgment.

Second, we must determine whether the video S.K. distributed to her friends is an "item" enumerated in the statute. We agree with the Court of Special Appeals that S.K.'s

30

digital file is obviously not a still picture, photograph, book, pocket book, pamphlet, magazine, or recorded telephone message. Therefore, we must determine whether it falls within the category of "videodisc, videotape, video game, film, or computer disk." We agree with the Court of Special Appeals that "film" has two potentially relevant dictionary definitions as a noun—film as a medium and film in the context of a motion picture or movie. However, we diverge from the Court of Special Appeals' conclusion that the statute is referring to a particular type of media. Rather, based on the intent of the legislature, a digital video file is a film as a motion picture or movie and thus within the purview of the statute.

We have previously found situations where statutes can be applied to encompass post-enactment technological advances. *See Sieglein v. Schmidt*, 447 Md. 647 (2016). In *Sieglein*, the petitioner argued that the term "artificial insemination" had a plain meaning in reference only to intrauterine insemination. *Id.* at 660. He argued that in vitro fertilization, the procedure used in that case, should be excluded from the definition of "artificial insemination" because the procedure could not have been contemplated when Section 1-206(b) of the Estates and Trusts Article was introduced. After a review of the plain meaning and the legislative intent, this Court determined "[t]he term 'artificial insemination,' then, in Section 1-206(b) of the Estates and Trusts Article encompasses in vitro fertilization, the reproductive technique used in the present case." *Id.* at 667.

In a similar vein, the predecessor to CR § 11-203 was § 419 of Article 27 of the Maryland Code which prohibited "engag[ing] in the business of selling, showing, advertising for sale, or distributing to a [minor] . . . any still picture, photograph, book,

31

pocketbook, pamphlet, magazine, video disc, video tape, or recorded telephone message."

This Statute was a part of a group of statutes that addressed obscenity and the sale of these materials. *See* Md. Code, 1957, Article 27, §§ 420-425.

In 1995, the General Assembly revised the statute to (1) include "film" and "computer disc" within the list of media covered by the statute, and (2) extend the reach of the statute to the display or exhibit of the items, even if not for "business." 1995 Md. Laws, ch. 133. The amendments were an attempt to "clos[e] the loopholes that modern technology have handed the purveyors of pornography." 1995 Md. Laws, ch. 133 (bill file for S.B. 21, Letter from Department of Maryland State Police and Letter from American Academy of Pediatrics). In 2006, the statute was updated to add video games to the statute. We glean from the statutory revisions that the general intent of the General Assembly has been to foreclose, where appropriate, any future loopholes in the statute encompassing technological advances.

We agree with the Court of Special Appeals that the statute technically "has not kept pace with the ways in which obscene images may be displayed to minors." *In re S.K.*, 237 Md. App. at 487. However, we disagree with their analysis because many of the other "items" enumerated, such as photographs, video discs, and videotapes, are now in digital format. *See* Thomas Crofts & Murray Lee, '*Sexting', Children and Child Pornography*, 35 Sydney L. Rev. 85, 106 (2013); Gray Mateo, *The New Face of Child Pornography: Digital Imaging Technology and the Law*, 2008 U. Ill. J.L. Tech. & Pol'y 175, 198 (2008); Jane Bailey, *Confronting Collective Harm: Technology's Transformative Impact on Child Pornography*, 56 U.N.B.L.J. 65, 102 (2007) (detailing the emergence of new technologies,

32

their effect on the distribution of child pornography, and legislative responses). In our plain language approach, we recognize the problematic aspects of applying statutory language emerging from the 1970s and 1990s to modern technologies. In short, the provision has failed to keep pace with technology and, in some instances, may be ill-suited in application to some technological advancement occurring subsequent to enactment and later amendment.

However, "film," by its definition as a motion picture or movie, is a predecessor media to the digital age. We disagree with the Court of Special Appeals' definition of film merely as a current media "on which photographs or videos can be produced." *Id.* at 486. For example, the Supreme Court in *Ferber* referred to "photographs and film" and "photographs and movies" interchangeably to capture the 1982 medium for films or movies depicting child pornography. *See supra* at 16-17. Over the decades, the medium has evolved from film (which typically was viewed by a movie projector shown on a projection screen) to videotape (which typically was viewed from a VHS cassette played on a VCR connected to a television screen) to digital file format (which began typically as a DVD played on a DVD player connected to a television or computer screen but is now ubiquitous through digital media players on computers, laptops, smartphones, iPads, tablets, E-readers, smartwatches, and other personal devices).[25]

---

[25] There are numerous acronyms for different types of audio-visual technologies. Relevant to our analysis are: (i) home system video ("VHS"); (ii) video cassette recorder ("VCR"); and (iii) digital versatile disc ("DVD"). Keith Jack, Vladimir Tsatsoulin, *Dictionary of Video and Television Technology*, 97, 294, 296 (2002). The distinction between these media mainly center around the underlying technology. For instance, both film, as a traditional medium, and VHS constitute forms of analog media. Richard W. Kroon, *A/V A*

In order to effectuate the intent of the General Assembly, we hold that the digital video file was a film under the statute. Therefore, S.K.'s transmission of a digital file is covered by CR § 11-203(b)(1)(ii). In summation, although the list of technologies enumerated under CR § 11-203(a)(4) can be viewed as somewhat antiquated when compared to post-enactment advancements in technology, the intent of the General Assembly remains clear: to avoid loopholes that may arise under the statute based on rapid technological advancement and the emergence of new forms of media.

Therefore, the video constitutes obscenity, the statutory list of technologies encompasses digital media, and S.K. violated CR § 11-203(b)(1) by distributing the video, depicting her—a minor—nude and engaging in a sex act. Accordingly, we reverse the judgment of the Court of Special Appeals with respect to the second issue and affirm S.K.'s delinquency finding.

**CONCLUSION**

As a matter of first impression, we are called to reconcile whether a minor may be adjudicated delinquent under the current statutory scheme as a distributor of child pornography and a displayer of obscene matter by the minor's act of sexting a cellphone video to other minors. For the foregoing reasons, the language of CR § 11-207(a)(4) is all-encompassing, and we cannot read into the statute an exception for minors. As to the

_____

*to Z: An Encyclopedic Dictionary of Media, Entertainment, and Other Audiovisual Terms*, 41–42 (2010). Film operates through exposing a photosensitive material to light which, in turn, "records subtle variations in light an color[.]" *Id.* at 42. Whereas, digital media including laser disc, DVD, and electronically stored video files, digitally encodes images to represent moving images. *Id.* at 209.

34

second issue, a cellphone video is a text digital file that is broadly captured under the term "film" in the enumerated "items" set forth in CR § 11-203. In addition, the file that S.K. transmitted to her minor friends, A.T. and K.S., which depicted her nude performing fellatio on a nude male was obscene as contemplated by CR § 11-203(a). Therefore, S.K. displayed obscene content to minors in violation of CR § 11-203(b)(1). Accordingly, we affirm the Court of Special Appeals as to the first issue and reverse the Court of Special Appeals as to the second issue.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED IN PART AND REVERSED IN PART; COSTS TO BE PAID BY PETITIONER/CROSS-RESPONDENT.**

Circuit Court for Charles County
Case No. 08-J-17-000023
Argued: February 1, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 41

September Term, 2018

———————————————————

IN RE: S.K.

———————————————————

Barbera, C.J.,
*Greene,
McDonald,
Watts,
Hotten,
Getty,
Harrell, Glenn T. (Senior Judge, Specially Assigned)

JJ.

———————————————————

Dissenting Opinion by Hotten, J.

———————————————————

Filed: August 28, 2019

*Greene, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Respectfully, I dissent and would reverse the judgment of the Court of Special Appeals regarding issue one and affirm as to issue two.

## S.K. WAS NOT INVOLVED IN THE OFFENSE OF DISTRIBUTION OF CHILD PORNOGRAPHY

The first issue seeks to resolve whether the juvenile court erred in finding that 16-year-old S.K. was involved in distributing child pornography as proscribed by Criminal Law Article ("Crim. Law") § 11-207(a)(4). The Majority affirms the holding of the juvenile court and the Court of Special Appeals, conducting a statutory analysis that largely rests on a plain language interpretation. ("We do not find any ambiguity in this text and, therefore it is our duty to interpret the law as written and apply its plain meaning to the facts before us." Majority Opinion at 22). The Majority concludes that the statute is unambiguous, and therefore, that S.K. is a "person" and a "minor," subject to delinquency for distributing child pornography. I respectfully disagree, based on ambiguity in the statute, and conclude that Crim. Law § 11-207(a)(4) does not operate to prosecute consensual sexual activity among minors. I explain more fully below.

*Plain Language Analysis of Crim. Law § 11-207(a)*

The text of Crim. Law § 11-207(a)(4)(i) provides that: "A **person** may not: knowingly promote, advertise, solicit, distribute, or possess with the intent to distribute any matter, visual representation, or performance: that depicts a **minor** engaged as a subject in sadomasochistic abuse or sexual conduct [.]" (emphasis added). The Majority provides that a "person" and "minor" are one and the same individual, such that S.K. is delinquent

"for transmitting a visual representation of herself engaged in consensual, legal sexual conduct." Majority Opinion at 20.

I assert that a plain reading of the text could lead to a conclusion that "person" and "minor" are two different people. The full text of Crim. Law § 11-207(a) provides that:

(a) A **person** may not**:**

> (1) cause, induce, solicit, or knowingly allow **a minor** to engage as a subject in the production of obscene matter or a visual representation or performance that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct;
>
> (2) photograph or film **a minor** engaging in an obscene act, sadomasochistic abuse, or sexual conduct;
>
> (3) use a computer to depict or describe **a minor** engaging in an obscene act, sadomasochistic abuse, or sexual conduct;
>
> (4) knowingly promote, advertise, solicit, distribute, or possess with the intent to distribute any matter, visual representation, or performance:
>> (i) that depicts **a minor** engaged as a subject in sadomasochistic abuse or sexual conduct; or
>> (ii) in a manner that reflects the belief, or that is intended to cause another to believe, that the matter, visual representation, or performance depicts a **minor** engaged as a subject of sadomasochistic abuse or sexual conduct; or
>
> (5) use a computer to knowingly compile, enter, transmit, make, print, publish, reproduce, cause, allow, buy, sell, receive, exchange, or disseminate any notice, statement, advertisement, or **minor's** name, telephone number, place of residence, physical characteristics, or other descriptive or identifying information for the purpose of engaging in, facilitating, encouraging, offering, or soliciting unlawful sadomasochistic abuse or sexual conduct of or with **a minor**.

2

(emphasis added).  Grammatical convention provides that one purpose of a colon is to "introduce[] an element or series of elements that illustrates or amplifies the information that preceded the colon. . . .  [One can] [t]hink [of a colon] as a flashing arrow that points to the information following it." *Colon*, GRAMMARLY, https://www.grammarly.com/blog/colon-2/, *available at* https://perma.cc/D5KK-FMXX (last visited Aug. 27, 2019).  Therefore, the noun "person," which precedes the colon, applies equally to all of § 11-207(a)'s subsections; reading "person" and "minor" to be the same individual would create redundancy in the statute.  The statute's format is such that a "person" is a separate entity from the "minor."  I do not read an "exception for minors who distribute their own matter[]" into the statute.  Majority opinion at 23.  Rather, I conclude that a plain language reading of the statute simply does not permit a "person" to be the same individual as the "minor."

The State concedes that under subsection (a)(1), "the same individual cannot be the 'person' and the 'minor.'"  The State argues, however, that for purposes of subsections (a)(2)-(a)(5), the terms "person" and "minor" may indeed be the same individual.  This distinction between subsections (a)(1) and (a)(2)-(a)(5) is contrary to canons of statutory construction, which dictate that one should avoid interpreting a provision in a manner that is inconsistent with the structure of the statute.  *See Eli Lilly and Co. v. Medtronic, Inc.*, 496 U.S. 661, 669, 110 S.Ct. 2683, 2688 (1990) (affirming the Court of Appeals' interpretation by considering "the structure of the 1984 Act taken as a whole[ ]"); *see also Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 49, 108 S.Ct. 376, 377 (1987).  Here, the structure of the statute uses a colon to introduce two

3

separate entities: a "person" and a "minor."  We cannot arbitrarily forgo the structure of the statute from one subsection to the next so that the term "person" presents different meanings.  Given that the "person" and "minor" in Crim Law § 11-207(a) must be two distinct individuals, it would be impossible for S.K. to fall under the prohibitions of the statute.  As provided by S.K., the statute creates a dichotomy "between the pornographer, or "person," and victim, or "minor" so that these two actors are different individuals[.]"[1]  Therefore, I conclude that the plain language of Crim. Law § 11-207(a)(4)(i) does not permit S.K. to be delinquent for transmitting a visual representation of herself.  There is ambiguity in Crim. Law § 11-207(a).  ("We have said that there is an ambiguity within a statute when there exist two or more reasonable alternative interpretations of the statute." *Bellard v. State*, 452 Md. 467, 481, 157 A.3d 272, 280 (2017)).  When such ambiguity exists, "the job of this Court is to resolve the ambiguity in light of the legislative intent[.]" *Id.*

*Legislative Intent Analysis of Crim. Law § 11-207(a)*

---

[1] Furthermore, there is ambiguity in the terms "engaged as a subject."  One definition of a "subject" is an individual who is under the control or dominion of another. *See* MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/subject, *available at* https://perma.cc/2DC6-Y7T7 (last visited Aug. 27, 2019).  Because S.K. was sixteen and capable of consenting to sexual activity, *see Garnett v. State*, 332 Md. 571, 577, 632 A.2d 797, 800 (1993) (stating that the age of consent in Maryland is 16-years-old), she could not be "engaged as a subject" as provided in Crim. Law § 11-207(a)(4)(i).  The Court of Special Appeals rejected this definition, concluding that "a minor is 'engaged as a subject' in sexual conduct if she or he is a participant in, or the object of, such conduct."  *In re S.K.*, 237 Md. App. at 469, 186 A.3d at 187.  However, given the conflicting definitions of "engaged as a subject," there is ambiguity in the terms and we must consider other indicia of legislative intent for enacting the statute.  *Bellard v. State*, 452 Md. 467, 481, 157 A.3d 272, 280 (2017).

The legislative purpose in enacting the child pornography statute was to address child pornography trafficking and to prevent the sexual exploitation and abuse of minors. *See* 1978 Md. Laws. Ch. 573; *see also Outmezguine v. State*, 335 Md. 20, 36, 641 A.2d 870, 878 (1994). The history of legislation, discussed further below, reveals that the State sought to protect children from *exploitation and abuse* as opposed to enacting laws that criminalized consensual sexual activity among minors. Reading the statute in a contrary fashion subverts legislative intent.

In *Outmezguine v. State*, 335 Md. 20, 641 A.2d 870 (1994), this Court considered the former iteration of Crim. Law § 11-207 and contemplated the General Assembly's intent in crafting this State's child pornography laws. In reflecting on a Petitioner's First Amendment challenge to his conviction of photographing a minor engaged in sexual conduct in violation of § 11-207(a)(2), this Court asserted that "we balance the right to freedom of expression against the right of the **State to protect children against sexual exploitation**." *Id.* at 36, 641 A.2d at 878 (emphasis added). Therefore, the Court illuminated the General Assembly's intent to protect children against sexual exploitation under Crim. Law § 11-207(a).

In the case at bar, S.K. was not being exploited by someone else. She made a video depicting consensual sexual conduct. The General Assembly did not seek to subject minors who recorded themselves in non-exploitative sexual encounters to prosecution, as reflected by the language of Crim. Law § 11-207(a). Rather, the statute contemplates *protecting* children from the *actions of others* that bear negatively upon them.

The Court of Special Appeals and the State cited a series of cases in asserting that § 11-207(a) reflects the General Assembly's broader intent to eliminate child pornography in its entirety. By this logic, the Majority asserts that S.K. violated Crim. Law § 11-207(a)(4)(i) by contributing to the proliferation of child pornography. Our intermediate court cited to *Outmezguine* in support of this contention. In *Outmezguine*, this Court asserted that "[t]he State unquestionably has a significant interest in protecting children … in prohibiting the use of children as subjects in pornographic material." 335 Md. at 37, 641 A.2d at 879. Though this is a broad assertion that seeks to protect all children depicted in pornographic content, it is important to note the parenthetical and statement that immediately follow: "*See Ferber*,[ ], 458 U.S. at 757, 102 S.Ct. at 3354[2] (stating that the goal of **preventing the sexual exploitation of children** is 'of surpassing importance'). Balancing these various interests, we conclude that the low value of expression (adult nonobscene pornography) sought to be protected is easily overcome by the interest in **protecting children from sexual exploitation**." *Outmezguine*, 335 Md. at 37-38, 641 A.2d at 879 (emphasis added). The Court of Special Appeals miscategorized *Outmezguine*, because the legislative intent of § 11-207(a) was to protect children from *exploitation*. There was no exploitation in the case at bar.

The Majority and Court of Special Appeals also referred to the Supreme Court's decision in *Ferber* to support its legislative intent argument. Though the *Ferber* Court asserted the general principle "that the use of children as subjects of pornographic materials

---

[2] *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348 (1982).

6

is harmful. . . ." 458 U.S. at 758, 102 S.Ct at 3355, the Court clarified its assertion in a footnote, stating that "the use of children as ... subjects of pornographic materials is very harmful to both the children and the society as a whole. It has been found that **sexually exploited children** are unable to develop healthy affectionate relationships in later life. …" *Id.* at n.9 (internal quotations and citations omitted). Therefore, the *Ferber* Court qualified its broader and generalized assertion regarding its concern for children in pornographic content. The qualification in footnote nine specified the Court's particular concern regarding the **exploitative** nature that arises when children are used in pornographic content. The Court expressed concern for the welfare of exploited children, rather than the general use of children as subjects. The *Ferber* Court's specific concern for exploited and abused children is further evidenced by the very quote that the Majority cites: "The distribution of photographs and films depicting sexual activity by juveniles is intrinsically **related to the sexual abuse of children** in at least two ways." Majority Opinion at 17 (quoting *Ferber*, 458 U.S. at 759, 102 S.Ct. at 3355). The Majority's thorough analysis of legislative history in this State, which traces the 1978 precursor to Crim. Law § 11-207 to the 2019 passage of House Bill 1027, reveals the same: the General Assembly sought "to send a message to people who would **exploit** minors." Majority Opinion at 24. At no point does the Majority's legislative history reflect an intent to prosecute minors engaging in consensual sexual activity.

Notably, the Majority cites *State v. Gray*, 189 Wash.2d 334, 402 P.3d 254 (Wash. 2017), which considered the plain language and legislative intent of a child pornography statute. The *Gray* Court held that the 17-year-old Petitioner was rightfully convicted under

7

the Revised Code of Washington ("RCW") 9.68A.050(1)(a)(i) for sending an unsolicited

image of his erect penis to an adult woman. RCW 9.68A.050(1)(a)(i) states:

> (1)(a) A **person** eighteen years of age or older commits the crime of dealing in depictions of a minor engaged in sexually explicit conduct in the first degree when he or she:
>    (i) Knowingly develops . . .disseminates . . . or sells a visual or printed matter that depicts a **minor** engaged in an act of sexually explicit conduct . . .

(emphasis added). The Court held that the "person" and "minor" in the statute could be

the same individual, but cited to the Legislature's intent in creating the statute. RCW

9.68A.001(2) specifies that the Washington Legislature intended for the statute to extend

beyond the scope of addressing sexual exploitation of children. "The [L]egislature

intended to destroy the blight of child pornography everywhere, from production of the

images to commercial gain. . . . '[T]his interest extend[ed] to stamping out the vice of child

pornography at all levels in the distribution chain.'" *Gray*, 189 Wash.2d at 343, 402 P.3d

at 259 (quoting RCW 9.68A.001(2)). As such, though the Washington statute is analogous

to the statute in the case at bar, the *Gray* Court found explicit reference to the broader intent

of its Legislature to stamp out child pornography. There is no evidence that such a broad

intent existed when the General Assembly enacted Crim. Law § 11-207(a).

Given the General Assembly's intent to protect children from sexual exploitation,

Crim. Law § 11-207(a) does not apply to S.K. In its passage of the statute, the General

Assembly considered the use of children in the production of pornography and the

pornography industry which had become a "highly organized multimillion dollar industry

that operates on a national scale." *Ferber*, 458 U.S. at 749, 102 S.Ct. at 3350, n.1 (citations

8

omitted). S.K.'s conduct is different, as she was alleged to have engaged in consensual sexual activity that was not abusive or exploitative in nature.

*The General Assembly's Intent to Protect Children and the Rehabilitative Nature of Juvenile Proceedings*

In *Gray*, *supra*, three judges dissented, contending that the legislative intent for the statute at issue was to protect children and that such an intent should exempt children from prosecution under the law. Relevant to the case at bar, the dissenting judges wrote:

> For more than 80 years, the United States Supreme Court, federal courts, and Washington courts have held that when the legislature enacts a statute designed for the protection of one class—here, children depicted in sexually explicit conduct—it shows the legislature's intent to protect members of that class from criminal liability for their own depiction in such conduct. *E.g., Gebardi v. United States,* 287 U.S. 112, 119, 53 S.Ct. 35, 77 L.Ed. 206 (1932); *City of Auburn v. Hedlund,* 165 Wash.2d 645, 652, 201 P.3d 315 (2009). RCW 9.68A.050 was enacted against that historical backdrop. **It was specifically intended to protect children depicted in pornography. Since the legislature enacted RCW 9.68A.050 to protect those children, it necessarily follows that those children who are depicted and hence exploited are exempt from prosecution under RCW 9.68A.050 for such depictions of themselves.**
>
> Indeed, if the legislature wanted us to apply a different rule of statutory interpretation—one that would permit members of the protected class to be charged, prosecuted, convicted, and imprisoned for up to 10 years for sexually explicit, exploitative depictions of their own bodies—it was the legislature's duty to explicitly say that they were departing from the general rule of statutory interpretation. The legislature did not say so here. Its silence must be construed as an endorsement of the general rule.

189 Wash.2d at 349-50, 402 P. 3d at 262 (McCloud, J., dissenting) (emphasis added) (footnote omitted). The *Gray* dissent is applicable to the case at bar, demonstrating that the Majority's interpretation of the statutory language "punishes the most vulnerable

participant—the depicted child—no matter what personal pressures or personal struggles … compelled the child to do it." 189 Wash.2d at 350, 402 P.3d at 262.

The Court of Special Appeals recognized that self-produced pornography can cause "significant 'physiological, emotional, and mental' harm to the minor[,]" including withdrawal from others, depression, anxiety, and low self-esteem. *In Re: S.K.*, 237 Md. App. 458, 473, 186 A.3d 181, 189 n.6 (2018) (internal citations omitted). S.K.'s mother testified that "[w]hen all this hit, sort of hit the fan back [in] December that was when everything, her grades went downhill. She, she did not, didn't go to school the whole month of December because of this. And [t]hen, and it just went spiraling[.]" S.K.'s mother further testified that when S.K. learned that the video was being circulated to others at school, S.K. called her mother "from school in tears[.]" It is clear that S.K. suffered immense distress after learning that the digital file had been circulated among peers—such distress that she could not fathom going back to school for an entire month. She suffered from the very emotional and mental harms that the Court of Special Appeals referenced. It therefore seems counterintuitive to further subject S.K. to prosecution under a statute that was designed to protect her.

For purposes of resolving delinquent behavior or conduct, the mission of the juvenile court in Maryland includes achievement of a respectful, sensitive, holistic approach to the child – balancing the components of rehabilitation, treatment and public safety with attention and care – in an effort to resolve the delinquent conduct. *See* Cts. & Jud. Proc. § 3-8A-02. The General Assembly enacted Crim. Law § 11-207 to protect

10

minors, not to subject them to prosecution "for their own harm[.]" *Gray*, 189 Wash.2d at 353, 402 P.3d at 263.[3]

[3] The goal of the juvenile justice system is to reform, not punish, juveniles. *See* Cts. & Jud. Proc. § 3-8A-01(b). Since the 1990s, "key distinctive and rehabilitative approaches of the juvenile justice system have been lost to the more severe consequences attendant to criminal justice system involvement." *Youth in the Justice System: An Overview*, Juv. L. Ctr., https://jlc.org/youth-justice-system-overview, *available at* https://perma.cc/HR8C-PH5R (last visited Aug. 27, 2019). For example, "juvenile records have increasingly become more accessible, and in most jurisdictions are not automatically sealed or expunged when the young person becomes an adult. This creates barriers to obtaining employment, serving in the military, or enrolling in higher education programs." *Id.* A juvenile record can be shared with the minor's school, and the Common Application, used by more than 600 colleges and universities, asks if the individual has "ever been adjudicated guilty." *Have a Juvenile Record? Plan for Your Future* [ ] National Juvenile Defender Center at 18 (Dec. 2017), *available at* https://perma.cc/C8V6-WHGA. In Maryland, the sentencing guidelines worksheet for adult offenders contemplates juvenile delinquency in computing an "offender score." *See* Md. State Commission on Crim. Sent'g Pol'y, Maryland Sentencing Guidelines Manual at 7 (July 2019), *available at* https://perma.cc/CW6K-6VHK (providing that the offender score includes "any finding of a delinquent act . . . within five years prior to the date of the most recent instant offense.").

Given the collateral consequences of juvenile adjudication within the broader scheme of rehabilitation, we must proceed cautiously with findings of delinquency. In the instant matter, the retributive nature of the juvenile adjudication by the State is evident by the significant stigma and trauma to S.K., which is exacerbated by the juvenile court's delinquency findings. Rather than provide remedies to assist and protect, the State generated conditions on S.K. that were retributive, including GPS monitoring, which the juvenile court unequivocally denied.

I also find the failure to exercise prosecutorial discretion towards a 16-year-old minor who was visibly distressed by dissemination of – what she believed to be – a confidential file shared with two friends – highly problematic. The State had the discretion to file charges, and ultimately charged S.K. as a juvenile with **three counts,** one of which was dismissed for lack of evidence. The rigor with which the State sought to prosecute S.K. is at odds with the rehabilitative nature of juvenile proceedings.

11

Based on a statutory interpretation of Crim. Law § 11-207, in conjunction with the rehabilitative nature of juvenile proceedings, I conclude that S.K.'s conduct does not fall within the purview of the statute.

**S.K. WAS NOT INVOLVED IN THE OFFENSE OF DISPLAYING AN OBSCENE ITEM TO A MINOR**

The second issue seeks to resolve whether the juvenile court erred in finding S.K. involved in the offense of displaying an obscene item to a minor as proscribed by Crim. Law § 11-203(b)(1)(ii). The Majority affirms the holding of the juvenile court and reverses the holding of the Court of Special Appeals.

Crim. Law § 11-203(b)(1)(ii) provides: "A person may not willfully or knowingly display or exhibit to a minor an **item**: that consists of an obscene picture of a nude or partially nude figure." (emphasis added). At issue is whether S.K. transmitted an "item" within the definition of Crim. Law § 11-203(a)(4), which defines an item as a: "(i) still picture or photograph; (ii) book, pocket book, pamphlet, or magazine; (iii) videodisc, videotape, video game, film, or computer disc; or (iv) recorded telephone message."[4] I agree with the Majority in concluding that "S.K.'s digital file is obviously not a still picture, or photograph; book, pocket book, pamphlet, magazine, or recorded telephone message. "Therefore, we must determine whether it falls within the category of 'videodisc, videotape, video game, film, or computer disk.'" Majority Opinion at 31. The Majority agrees with the Court of Special Appeals, concluding that "'film' has two potentially

---

[4] The Majority also conducts an obscenity analysis, but my focus is on whether S.K. distributed an "item" within the purview of Crim. Law § 11-203(a)(4). Because I conclude that the digital file is not an "item," an obscenity analysis is unnecessary here.

12

relevant dictionary definitions as a noun—film as a medium and film as a motion picture or movie." *Id.* The Majority's analysis diverges from our intermediate court however, in concluding that "a digital video file is a film as a motion picture or movie and thus within the purview of the statute [because the file is a motion picture or movie, as opposed to a medium.]" *Id.*

I respectfully dissent and conclude that the term "film," as used in the statute, does not refer to "a motion picture or movie" but rather, to a kind of medium. Because S.K.'s digital file is not within the medium of film, she is not subject to adjudication under the statute.

The doctrine of *noscitur a sociis* specifies that "the meaning of an unclear word or phrase, esp[ecially] one in a list, should be determined by the words immediately surrounding it." Black's Law Dictionary (11th ed. 2019). The term "film" is grouped with "videodisc, videotape, video game, or computer disc." All of these terms, with the potential exception of "video game" "unambiguously refer only to . . . types of physical media, not to content that might be placed on such media." *In re S.K.*, 237 Md. App. at 486, 186 A.3d at 197. Given the general grouping that "film" is placed in, the proper definition to attribute to "film" is not a motion picture, but rather, a physical medium that can contain content. Specifically, "film" as a medium containing content, is defined as "a thin flexible strip of plastic or other material coated with light-sensitive emulsion for exposure in a camera, used to produce photographs or motion pictures." *Id.* at 484-85, 237 Md. App. at 196. Therefore, S.K's file does not meet the definition of "film." Furthermore, as the Court of Special Appeals noted, "construing 'film' to refer to a 'motion picture,' at least as broadly

13

as the State [and Majority] interprets that term, would render nearly or entirely superfluous the terms 'videodisc' and 'videotape.' When possible, [courts] avoid any interpretation of a statute that would render any of its language superfluous." *Id.* (internal citation omitted).

The Majority asserts that statutory language maintains pace with technological innovations. Accordingly, the Majority maintains that S.K's digital file falls within the purview of the term "film." However, if the General Assembly wanted to amend the language of Crim. Law § 11-203 to include digital files, it would have done so. There have been amendments to Crim. Law § 11-203 to expand its applicability to other "items," but none of these amendments have included digital video files. As provided by S.K.:

> In 1982, the law applied only to obscene or sexually explicit "still picture[s], photograph[s], book[s], pocket book[s], pamphlet[s], or magazine[s]." Md. Code (1957, 1982 Rep]. Vol) Art 27 Section 419; 1981 Md. Laws c. 725 (S.B.725). In 1984, the Legislature amended this list to include "video disc[s]"and "video tape[s]." 1984 Md. Laws ch. 590 (H.B.155). In 1986, lawmakers added "recorded telephone messages" to the list. 1986 Md. Laws, Ch. 851 (H.B.l). Since then, the list has grown to include film and computer discs (1995) and video games (2006). 1995 Md. Laws Ch. 133 (S.B. 21); 2006 Md. Laws Ch. 346 (H.B. 707). **[However,] [a]t no time did the Legislature include in this list of items a general "catch all" category or other expansionary phrase**. . . ."

(emphasis added) (footnote omitted). The General Assembly (had it wanted to) could have expanded the definition of "item" in Crim. Law § 11-203(a)(4) by specifying inclusion of a digital video file or by providing a "catch all" category. For example, Crim. Law § 11-208 prohibits the knowing possession and intentional retaining "of a film, videotape, photograph, **or other visual representation** showing an actual child under the age of 16 years" engaged in a variety of activities. The General Assembly amended Crim. Law §

14

11-208 in 2008 to include the use of the catch-all phrase "other visual representation." The amendment demonstrates that "when the Legislature wants to be expansive and include other types of media not specified, it knows how to do it, and it did not do it here." Rather, the General Assembly used very specific language to define an "item," none of which encompasses S.K's file.

Further support for restricting the term "film" to a type of medium arises from recent legislative history. In response to the opinion of the Court of Special Appeals in this case, Delegate Kathleen M. Dumais introduced House Bill 97 which was later cross-filed by Senator Susan C. Lee as Senate Bill 1003 during the 2019 Legislative Session. These bills sought to revise the "items" enumerated in Crim. Law § 11-203 to include a video file, video image, video recording, or recorded telephone message.

During the hearing before the Judicial Proceedings Committee, Baltimore County State's Attorney Scott D. Shellenberger indicated that the statute was last updated in 2006, and that these bills would assist in conforming the statute to keep pace with modern technology. House Bill 97 passed the House **but neither bill passed in the Senate Judicial Proceeding Committee.** As such, the General Assembly expressly rejected expanding the definition of "item" under Crim. Law § 11-203(a)(4), and we should not expand the definition beyond the General Assembly's intent.

The Majority cites *Sieglin v. Smith*, 447 Md. 647, 136 A.3d 751 (2016) to support its proposition that a statute can be interpreted to encompass technological advances. In *Sieglin*, this Court addressed the question of whether Md. Code, Estates & Trusts § 1-206(b) – making legitimate children conceived by way of artificial insemination – applied

15

to children conceived via in vitro fertilization. 447 Md. at 651, 136 A.3d at 754. The *Sieglin* Court noted that "artificial insemination" was not defined by the statute and found that the purpose of the statute was to legitimize a child born with donated sperm. *Id.* at 666-67, 136 A.3d at 763. The Court held that the term "artificial insemination" was broad enough to include in vitro fertilization. *Id.* at 662, 136 A.3d at 760. However, *Sieglin* is distinct from the case at bar. In *Sieglin*, the term "artificial insemination" was not defined, whereas the term "item" in the instant case is defined with specificity. Further, *Sieglin* considered a civil statute as opposed to a criminal statute. Unlike civil statutes, criminal statutes must be construed strictly in favor of the defendant "so that only punishment contemplated by the language of the statute is meted out." *Gargliano v. State*, 334 Md. 428, 437, 639 A.2d 675, 679 (1994) (internal citations omitted). Given that *Sieglin* considered an undefined term in a civil statute, the Majority's use of the case is misplaced.

The analysis, *supra,* reveals that the statutory language of an "item" in Crim. Law § 11-203(a)(4) does not apply to S.K's digital file.

## CONCLUSION

A statutory analysis of Crim. Law § 11-207(a) reveals that the General Assembly never sought to subject juveniles to adjudication for consensual sexual activity among minors. The intent behind the statute is to protect children from abuse and exploitation, neither of which is currently at issue. As such, I dissent with the Majority on the first matter and would reverse the holding of the Court of Special Appeals.

I also dissent with the Majority on the second issue and would affirm our intermediate court's holding. I believe that the Majority applies an overly-broad definition

16

to "film" in Crim. Law § 11-203(a)(4)(iii) and that we should interpret "film" to mean a particular type of medium, which does not apply to S.K's digital file. Legislative history reveals that the General Assembly has not passed an expanded definition of an "item," despite a recent attempt to do so. As such, I disagree with any expanded definition of an "item" or "film."

17